STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0055

MAYO WHITTON, DEA WHITTON, CHRIS WHITTON, CODY WHITTON, SHIRAS WHITTON, INDIVIDUALLY, AND ON BEHALF OF HIS MINOR CHILD RYLANCE C. WHITTON

VERSUS

THE LOUISIANA HOUSING FINANCE AGENCY, ASD CONSULTANT, INC., LOUISIANA SYSTEMS BUILT HOME, LLC

Judgment Rendered: **JAN 07 2026**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 591359 • Sec. 22

Honorable Beau M. Higginbotham, Judge Presiding

* * * * *

| | |
|---|---|
| J. Arthur Smith, III<br>Seth M. Dornier<br>J. Arthur Smith, IV<br>Baton Rouge, Louisiana | Counsel for Appellants-Plaintiffs,<br>Mayo Whitton, Dea Whitton, Chris<br>Whitton, Cody Whitton, Shiras<br>Whitton, and Rylance C. Whitton |
| J. Wendell Clark<br>David L. Guerry<br>Sharon S. Whitlow<br>Mark L. Barbre<br>Baton Rouge, Louisiana | Counsel for Appellee-Defendant,<br>Louisiana Housing Corporation,<br>formerly Louisiana Housing Finance<br>Agency |
| Arthur W. Landry<br>Jeanne A. Landry<br>New Orleans, Louisiana | Counsel for Appellee-Defendant,<br>ASD Consultant, Inc. |

Keely Y. Scott
Christopher J. Bourgeois
Kaitlyn J. Dyer
Autumn M. Coe
Baton Rouge, Louisiana

Counsel for Appellee-Defendant,
Bastoe Plumbing, LLC

\* \* \* \* \*

BEFORE:  LANIER, WOLFE, AND HESTER, JJ.

**HESTER, J.**

This litigation involves the construction of a new modular home under the Louisiana Restore Share Grant Program. Herein, the homeowners appeal the trial court judgment granting summary judgment in favor of the state agency administering the grant program. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On June 7, 2010, the plaintiffs, Mayo Whitton ("Mr. Whitton")[1], Dea Whitton, Chris Whitton, Cody Whitton, and Shiras Whitton, individually and on behalf of his minor child, Rylance C. Whitton (collectively "the Whittons") filed a Petition for Damages, naming defendants including the Louisiana Housing Corporation, formerly Louisiana Housing Finance Agency ("LHC") and ASD Consultants, Inc. ("ASD") (collectively "the defendants"). In their petition, the Whittons sought damages arising from their allegedly defective modular home constructed by ASD and obtained *via* a grant through the Louisiana Restore Share Grant Program administered by LHC. The Whittons contended that there were several defects in the modular home including defects that caused water intrusion that resulted in toxic mold. The Whittons alleged that the "defendants' repeated negligence in failing to repair the home, mitigate the water damage, and remediate the mold" resulted in the family suffering "coughing, sinus congestion, chest pain, compromised immune system, neurological damage and fungal growth in open sores."

On May 27, 2016, ASD filed a Motion for Summary Judgment, Alternatively, Motion for Partial Summary Judgment contending that the Whittons' claims were controlled by the New Home Warranty Act, La. R.S. 9:3141 ("NHWA"). The trial court signed a judgment on May 5, 2017 ordering that ASD's claims were limited to claims under the NHWA. The Whittons appealed this decision, but the appeal was

---

[1] Mayo Whitton died on October 23, 2019, and in an order signed on May 17, 2022, Dea Whitton was substituted as plaintiff in the place of Mayo Whitton.

3

untimely. **Whitton v. Louisiana Housing Finance Agency**, 2025-0057 (La. App. 1st Cir. 11/7/25) 2025 WL 3124732, **2-3 __ So.3d __, __. ("**Whitton I**").

On October 25, 2022, ASD filed a second Motion for Summary Judgment contending that Mr. Whitton's failure to provide ASD with an opportunity to remedy any defects in the home violated the NHWA and thereby voided the Whittons' claims in their entirety. On March 15, 2023, the trial court signed a judgment granting ASD's motion and dismissing the Whittons' claims against ASD "in their entirety." This court affirmed the trial court's judgment finding that ASD was not given a reasonable opportunity to make repairs on the home thereby precluding recovery under the NHWA. **Whitton v. Louisiana Housing Finance Agency**, 2025-0056 (La. App. 1st Cir. 11/7/25) 2025 WL 3124854, **5-6 __ So.3d __, __. ("**Whitton II**").

LHC filed a motion for summary judgment on November 15, 2022, contending that the Whittons' failure to allow repairs to the home constituted a "total failure to mitigate … damages so as to constitute an intervening and superseding cause of any … damages, regarding claims against LHC." LHC further contended that the Whittons have not and cannot demonstrate any legal duty owed by LHC in context of the allegations for defects in the home because LHC's role was as the state's financing agency that administered the grant program, and LHC was not involved in the construction of the home.

The Whittons responded contending that it did not refuse to allow the defendants to make repairs on the home; failure to mitigate is related to allocation of fault and not appropriate for summary judgment; and LHC as the recipient of the grant owed or at least assumed a duty to the Whittons to ensure their home was livable and to ensure compliance with both state and federal law.

After a hearing, the trial court signed a judgment on February 27, 2023, granting summary judgment and dismissing all of the Whittons' claims against LHC.

4

It is from this judgment that the Whittons appeal raising the following assignments of error: the trial court erred in finding that LHC had no duty to ensure the safety and habitability of the house provided to the Whitton family; the trial court erred in finding that there were no genuine issues of material fact regarding the issue of whether the Whittons allowed the defendants to enter the house to conduct warranty repairs on the house; and the trial court erred in finding the NHWA provided a defense to LHC.

## SUMMARY JUDGMENT

Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. Code Civ. P. art. 966(A)(2). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the mover. La. Code Civ. P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Id.**

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is

appropriate. **Troncoso v. Point Carr Homeowners Association**, 2022-0530 (La. App. 1st Cir. 1/10/23), 360 So.3d 901, 913. In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. **Troncoso**, 360 So.3d at 914. A genuine issue is one as to which reasonable persons could disagree. However, if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Id.** A fact is "material" when its existence or nonexistence is essential to the plaintiff's cause of action under the applicable theory of recovery. Any doubt as to a dispute regarding an issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. **Id.** Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Troncoso**, 360 So.3d at 914.

## ANALYSIS

As to the Whittons' final assignment of error, we agree that the NHWA, is not applicable to the Whittons' claims against LHC as LHC is not a builder. See La. R.S. 9:3143(1) and La. R.S. 9:3144. We reviewed together the remaining assignments of error, which address whether the Whittons allowed defendants to enter the home to conduct warranty repairs and whether LHC had a duty to ensure the safety and habitability of the house provided to the Whitton family.

LHC attached several documents in support of its position that Mr. Whitton would not allow the defendants to return to the home to make repairs, and in doing so, the Whittons failed to mitigate damages to the home. LHC further attached evidence to show its role in providing the Whittons with a home.

LHC attached excerpts from Mr. Whitton's deposition, where Mr. Whitton stated that initially, while he would allow ASD to return to the home, he did not want ASD to make any repairs. Mr. Whitton said he didn't want them to repair the home

6

until he could determine the type of mold that was in the home so that his family could seek treatment. He stated that he requested certain documentation from LHC before he would allow any repairs to be done on the property. Mr. Whitton also stated that ASD was not truthful with him, and "[he] did not want them on [his] property." Mr. Whitton acknowledged that his attorney made a preliminary agreement in January 2010 to have ASD pay for an inspection by a certified industrial hygienist, but he did not allow that to happen because he did not trust the toxicologist provided by ASD because of "evidence of what [ASD had] done in the past to [him]."

LHC attached the affidavit of Curtis Brown, the president of ASD, and the affidavit of Rickey Bastoe, the owner and president of Bastoe Plumbing, LLC, the plumbing subcontractor for ASD for the Whittons' home. In his affidavit, Mr. Brown attests that the Certificate of Occupancy was issued on June 25, 2009. Mr. Brown further notes that since that time until suit was filed "ASD made numerous attempts to obtain access to the subject premises for itself and its subcontractors for the purposes of inspecting and, if necessary, addressing the complaints registered by the Whittons," and "[o]n every occasion, ASD and its subcontractors, were denied access to the premises by Mr. Whitton." Mr. Brown further attests that after the Whittons obtained counsel, ASD communicated with counsel for the purpose of obtaining access to the premises to perform an inspection and to perform repairs if warranted, and again, all efforts by ASD to obtain access to the premises were rebuffed by Mr. Whitton. In his affidavit, Mr. Bastoe attests that several representatives of Bastoe Plumbing, LLC attempted to access the Whittons' home to address any allegations that the plumbing work was inadequately performed, but they were denied access to the property by Dea and Mr. Whitton.

LHC attached a November 20, 2009 letter from Charlotte Minor, LHC's program administrator, stating that ASD was notified of the issues and "[stood]

ready to attend." Ms. Minor also noted that in a prior telephone conversation "[Mayo Whitton] refuse[d] to have ASD on the property to assess the damage and/or make any necessary repairs covered under the warranty." Ms. Minor informed Mr. Whitton that LHC was willing to have personnel meet him and ASD on site to assess the required work. Ms. Minor noted that ASD is "ready to be on-site immediately," and she requested that Mr. Whitton contact her immediately to give availability for an on site inspection. Ms. Minor also informed the Whittons that should they continue to refuse assistance of the warranty contractor they might be limiting LHC's ability to further assist them.

LHC attached the affidavit of its attorney with correspondence attached from LHC's attorney to the Whittons and/or their attorney from December 14, 2009 through March 2, 2010. In the letters, LHC's counsel confirmed that there were problems with the home and requested cooperation by the Whittons to allow ASD to return to the home and fix the problems. He informed the Whittons that in order for home to remain under warranty, they must allow access to the property so that repair work could be performed. LHC's counsel made several requests over this period, attempting to set up meetings with the Whittons and ASD. LHC's counsel also informed the Whittons that ASD would pay for a mold assessment and tried to set a date for that to occur. LHC's counsel reminded the Whittons that LHC continued to be ready to meet with them and ASD at the home. LHC's counsel noted that conditions of the home may have deteriorated due to the delays caused by the Whittons and that it was in the best interest of everyone to stabilize the condition of the home and evaluate the mold that appeared to be present. The correspondence between LHC's counsel and the Whittons showed that the Whittons cancelled multiple meetings and did not want ASD to return to their home. LHC's counsel acknowledged in one of its letters that it sought "to enforce all applicable rules and

provisions, to see to it that the homeowner receives a home of the quality intended by the Program."

LHC also attached excerpts from the deposition of its representative, Brad Sweazy, who discussed the role of LHC in providing housing under the Louisiana Restore Share Grant Program. He stated that LHC's role was to obtain the proper permits and once the modular home is placed on the lot and the local code enforcement agency approves the home and issues the certificate of occupancy, LHC is to pay the contractor. Mr. Sweazy agreed that under the turn key model of construction of a modular home there is not any construction oversight, and LHC does not inspect the modular homes that are built under the Louisiana Restore Share Grant Program.

In opposition to the motion for summary judgment, the Whittons attached LHC's responses to requests for production of documents with the Field Report done by LHC in response to the Whittons' complaints regarding issues in the home. The Field Report addressed the concerns raised by the Whittons and determined that there were problems in the home, including plumbing issues, lack of anchorage holding the home to the foundation, framing that did not follow the engineer's bracing requirements, and the accessible ramp was not wide enough.

The evidence submitted in support of and in opposition to the motion for summary judgment reveals LHC's role in the construction of the modular home for the Whittons. LHC is a Louisiana State agency that administered funds provided by the United States Department of Housing and Urban Development ("HUD") to promote affordable housing in north Louisiana. The Whittons applied for funding and were approved by LHC to receive a modular home. LHC entered into a contract with ASD to demolish the Whittons' current home and erect a modular home on the Whittons' property. After the Certificate of Occupancy was issued in June 2009, LHC paid ASD from the HUD funds. Soon after the Whittons moved into the home

9

on July 7, 2009, they noticed several issues with the condition of the home, and reported the issues to ASD. The Whittons also contacted LHC and on November 9, 2009, LHC sent a representative to evaluate the property. In LHC's Field Report, several substandard conditions in the home were noted, including the possibility of conditions conducive for mold growth. LHC determined that repairs were needed and provided funding for hotel rooms for the Whittons to reside in while repairs were made to their home.

LHC's role as administrator of the grant program was to select participants, provide funding, and facilitate the work. LHC entered into the construction contract directly with ASD.[2] LHC did not construct the home and was not involved in reviewing the home to observe compliance with the plans. While LHC acknowledged in one of its letters that it was making every effort to enforce all applicable rules and provisions to see to it that the homeowner receives a home of the quality intended by the program, the summary judgment evidence demonstrates that it fulfilled this obligation. LHC inspected the home to confirm the Whittons' concerns, agreed that there were issues with the home, arranged alternative housing for the Whittons, made numerous attempts to facilitate ASD returning to the home to make repairs required under the NHWA, and attempted to arrange a certified hygienist to inspect the home for mold. The Whittons consistently failed to cooperate with LHC.

In the appeal of the trial court's grant of summary judgment in favor of ASD, this court concluded that no genuine issues of material fact remain that ASD was not given a reasonable opportunity to repair any defects in the home. See **Whitton II**. LHC, as the financing agency for the state, did not breach any duty to the Whittons and cannot be liable for the construction work of ASD when recovery from ASD

---

[2] The contract was not attached to LHC's motion for summary judgment or the Whittons' opposition to the motion for summary judgment.

was precluded under the NHWA for the failure to allow them a reasonable opportunity to make repairs. Concluding that LHC can be found liable for any issues with the construction of the home by ASD is untenable, given that the Whittons are precluded from recovering from ASD under the NHWA and that LHC made multiple efforts to ensure that the Whittons did not void their warranty by refusing to allow ASD to return to the home to perform repairs. After a thorough review of the evidence presented *de novo*, we find no error in the trial court judgment granting LHC's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of the Louisiana Housing Corporation is affirmed. All costs of this appeal are assessed to plaintiff-appellants, Dea Whitton, Chris Whitton, Cody Whitton, Shiras Whitton, individually and on behalf of his minor child, Rylance C. Whitton.

**AFFIRMED**.